IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**CITY OF LAS CRUCES** and
**COUNTY OF DOÑA ANA,**
      Plaintiffs,

vs.

**THE TRAVELERS INDEMNITY COMPANY,**
and **UNITED STATES FIDELITY AND**
**GUARANTY COMPANY**
      Defendants.

No. 14-CV-0931-MV-LAM

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Plaintiffs' Motion for Partial Summary Judgment Against Defendant United States Fidelity and Guaranty Company Declaring it to Be in Breach of its Duty to Defend and Memorandum of Authorities in Support Thereto [Doc. 34]. Defendants timely filed as their response the United States Fidelity and Guaranty Company's Fed. R. Civ. P. 56(D) Motion to Deny Plaintiffs' Motion for Partial Summary Judgment or Defer Consideration of Such Motion Pending Discovery [Doc. 47]. Plaintiffs filed a Response [Doc. 57] and Defendants replied [Doc. 70]. The Court having considered the Motions, briefs, relevant law, attached materials, and being otherwise fully informed, finds that United States Fidelity and Guaranty Company's Fed. R. Civ. P. 56(D) Motion to Deny Plaintiffs' Motion for Partial Summary Judgment or Defer Consideration of Such Motion Pending Discovery [Doc. 47] is well-taken and therefore will be **GRANTED** and will therefore **DENY WITHOUT PREJUDICE** Plaintiffs' Motion

1

for Partial Summary Judgment Against Defendant United States Fidelity and Guaranty Company Declaring it to Be in Breach of its Duty to Defend and Memorandum of Authorities in Support Thereto [Doc. 34].

## BACKGROUND

I. **The Underlying Events**

The factual background required to contextualize the instant Motions is easily recited. The New Mexico and United States National Guards "began operations" at a site in southern New Mexico near Las Cruces "in 1947 and operated there under the lease from the City until 1990." Doc. 34 ¶ 14(a). Evidently the National Guard units used solvents, including the potentially-carcinogenic perchloroethylene ("PCE"), during this period, some of which employees of the National Guard units have admitted that they disposed of improperly during the 1960s and 1970s. *See id.* Plaintiff avers that four other locations have similarly exhibited a history of PCE contamination. *See id.* ¶¶ 14(b)-(e). The PCE "dumped or spilled on the surface migrated downward toward the water table and then in an easterly direction under the influence of the City water supply wells." *Id.* ¶ 15.

The United States Environmental Protection Agency ("EPA") "has found that the City and County are liable by virtue of their ownership of portions of the Site since 1965 and 1941, respectively, of property where PCE was spilled, leaked, poured, or dumped, resulting in ground water contamination." *Id.* ¶ 16 (internal quotation marks omitted). "On October 7, 2004 and August 5, 2008," the EPA issued letters "to the City and County finding that PCE contamination historically

2

occurred on property each of them owned," thus asserting that it believed them to be liable. *Id.* ¶ 17. As a consequence of the EPA's actions, the "City and County have jointly expended more than $800,000 in unreimbursed payments to law firms for the cost" of defending against the EPA's claims. *Id.* ¶ 19. Similarly, the "City and County have expended more than $3.5 million to design and construct the remedial infrastructure" to abate the environmental damage described by the EPA. *Id.* ¶ 23. Plaintiffs now "seek defense and indemnity under various policies of liability insurance purchased from USF&G between 1975 and 1984 which are 'triggered' by preexisting, but 'continu[ing],' PCE contamination." Doc. 34 at 2. According to Plaintiffs, these policies each contained standard language providing that the "Company will pay on behalf of Insured all sums which the Insured shall become legally obligated to pay as damages because of…property damage to which this insurance applies" and that USF&G would defend "any suit" against the City or County. *See id.* ¶¶ 1-2.

## II. Procedural Posture

As described by Defendants, "Plaintiffs filed its [sic] original Complaint in the New Mexico Third Judicial District Court on September 16, 2014 and served the Complaint on USF&G and Travelers Indemnity Company on October 2, 2014." Doc. 47 at 3. USF&G then promptly removed the civil action to this Court on October 16, 2014 [Doc. 1]. In due course, Magistrate Judge Martínez set a Rule 16 Scheduling Conference for Thursday, December 4, 2014. *See generally* Doc. 7. Magistrate Judge Martínez reset this hearing for January 5, 2016 to accommodate

the Parties' schedules. *See generally* Docs. 12-13, 16. After the January 5, 2015 Scheduling Conference, Magistrate Judge Martínez entered an Order Adopting Joint Status Report And Provisional Discovery Plan With Changes And Setting Complex Case Management Deadlines [Doc. 24] in which she explained that the "parties agreed not to set any depositions before April 3, 2015" in part because the Order set April 3, 2015 as the "Deadline for Defendants to amend pleadings or add additional parties pursuant to Fed. R. Civ. P. 15, which may require opposing party's written consent or leave of Court." Doc. 24 at 2. In Defendants' view, the "purpose of the extended time for Plaintiffs to add parties and the parties' agreement not to take deposition discovery prior to this deadline was to accommodate the trial schedule of Plaintiffs' counsel and to avoid duplicative discovery should Plaintiff add additional insurer defendants to the case." Doc. 47 at 3.

Approximately two months later, on March 10, 2015, Magistrate Judge Martínez held another telephonic conference with the Parties. *See generally* Doc. 26. During this conference, Plaintiffs' counsel, "stated that the case is progressing and that he spent 4 days in Las Cruces reviewing documents and his paralegal has scanned 500,000 pages and has more to come" and that "there are massive documents and that the document process is slow but proceeding." *Id.* at 1. Accordingly, at that point the Parties had "not yet exchanged written discovery." *Id*. Additionally, during the conference, Plaintiffs' counsel indicated that they were still in the process of determining whether, and which, other insurers might be

added to the case and noted that Plaintiffs "may need additional time" to make that determination. *Id.*

Approximately three weeks later, on "March 30, 2015, Plaintiffs' counsel contacted [Defendants'] counsel to determine whether USF&G and Travelers would oppose Plaintiffs' motion to amend their Complaint." Doc. 47 at 4 (citing Doc. 48 ¶ 8). During this call, "Plaintiffs' counsel indicated that Plaintiffs' [sic] intended to join two additional insurer defendants." Doc. 48 ¶ 9. Evidently, Defendants did not object, in part because "Plaintiffs' counsel made no mention that Plaintiffs intended to file a contemporaneous Motion for Partial Summary Judgment against USF&G in conjunction with their Amended Complaint. In fact, Plaintiffs' counsel made no mention of its intention to file a Motion for Partial Summary Judgment until immediately prior to its filing, when he called to determine whether USF &G would oppose Plaintiffs' Motion." *Id.* ¶ 10. Defendants' version of events appears to find support in the Court's records: on Friday, May 15, 2015 Plaintiffs filed their Amended Complaint [Doc. 33]; on Monday, May 18, 2015, Plaintiffs filed their Motion for Partial Summary Judgment [Doc. 34]. This Motion "was supported by five declarations supporting various factual assertions made in the Motion and included 96 pages of exhibits." Doc. 48 ¶ 15 (citing Docs. 35-39). Accordingly, in their responsive Fed. R. Civ. P. 56(D) Motion to Deny Plaintiffs' Motion for Partial Summary Judgment or Defer Consideration of Such Motion Pending Discovery [Doc. 47], Defendants "respectfully requests that, in accordance with Rule 56(d) of the Federal Rules of Civil Procedure, this Court deny without prejudice or defer

consideration" of Plaintiffs' Motion, "filed one business day after their First Amended Complaint," in order to afford Defendants an opportunity to take discovery and prepare a more complete opposition to the Motion. Doc. 47 at 1-2.

## DISCUSSION

I. **Motion for Summary Judgment and Rule 56(d)**

The standard on an ordinary motion for summary judgment is, by now, easily recited: "[s]ummary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Lenox MacLaren Surgical Group v. Medtronic, Inc.*, 762 F.3d 1114, 1118 (10th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). For these purposes, an issue "is genuine if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way, and a fact is material if under the substantive law it is essential to the proper disposition of the claim." *Varnell v. Dora Consol. School Dist.*, 756 F.3d 1208, 1212 (10th Cir. 2014) (internal quotation marks omitted). Thus, "a mere factual dispute need not preclude summary judgment." *Sapone v. Grand Targhee, Inc.*, 308 F.3d 1096, 1100 (10th Cir. 2002). In evaluating the Motion, this Court will "consider all facts and evidence in the light most favorable to the parties opposing summary judgment." *Ron Peterson Firearms, LLC v. Jones*, 760 F.3d 1147, 1154 (10th Cir. 2014).

This standard is no different where, as here, the movant seeks summary judgment only as to some of the issues in dispute. *See, e.g.*, *Doshay v. Global Credit Collection Corp.*, 796 F. Supp. 2d 1301, 1303 (D. Colo. 2011) ("A motion for partial

summary judgment is resolved under the same standard as a motion for summary judgment."); *Pettengill v. United States*, 867 F. Supp. 380, 381 (E.D. Va. 1994) ("A motion for partial summary judgment utilizes the same standards required for consideration of a full motion for summary judgment."). That is, where the sole question with respect to a given issue is whether the facts adduced entitle the movant to judgment as a matter of law, this Court may narrow the scope of litigation by granting summary judgment.

However, Rule 56(d) provides that if "a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may" defer consideration of the motion, deny the motion, or grant other appropriate relief. Fed. R. Civ. P. 56(d). Such a declaration must specify: "(1) the probable facts not available, (2) why those facts cannot be presented currently, (3) what steps have been taken to obtain these facts, and (4) how additional time will enable [the party] to obtain those facts and rebut the motion for summary judgment." *Valley Forge Ins. Co. v. Health Care Mgmt. Partners, Ltd.*, 616 F.3d 1086, 1096 (10th Cir. 2010) (alteration original) (internal quotation marks omitted). See also *Birch v. Polaris Indus., Inc.*, -- F.3d --, 2015 WL 9310564, at *10 (10th Cir. Dec. 23, 2015) (same). In conducting this analysis, the Tenth Circuit has reaffirmed the "Supreme Court's directive that 'summary judgment [should] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition.'" *Ellis v.*

*J.R.'s Country Stores, Inc.*, 779 F.3d 1184, 1206 (10th Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986)).

II.     **The Instant Case**

First, Defendants seek to discover facts regarding "Plaintiffs' historical view of the Plaintiffs communications and interactions with governmental agencies and any proceedings brought by governmental agencies" because "Plaintiffs' understanding of the communications and interactions with governmental agencies and any proceedings brought by governmental agencies and the reasons for its years-late tender goes directly to the issue of whether Plaintiffs believed that the communications and interactions with governmental agencies and any proceedings brought by governmental agencies constituted a 'suit' as that term is used in the USF &G policies." Doc. 48 ¶ 27. That is, in Defendants' view, a "representative witness or witnesses are expected to testify" about "Plaintiffs' failure to make timely notice to USF&G of the claim," "Plaintiffs' payments that were made prior to notice of any claim being provided to USF&G," and "Plaintiffs' decision to compromise USF&G's subrogation rights by agreeing to settle or compromise some or all of the proceedings brought by governmental agencies giving rise to plaintiffs' claim." *Id.* ¶ 28. The Court is persuaded that investigation into the facts surrounding these issues during discovery may yield information relevant to, among other things, "Plaintiffs' understanding of the USF&G policy" and Defendants' theory that "Plaintiffs' delay in tendering the defense shows that Plaintiffs understood that their communications and interactions with governmental agencies and any

8

proceedings brought by governmental agencies leading to their claim did not constitute a 'suit' as that term is used in the USF&G policies." Doc. 70 at 6. Plaintiffs' argument that the question before the Court is one of pure law is belied by their conduct: Plaintiffs submitted five declarations and ninety-six (96) pages of exhibits in support of their Motion. *See generally* Docs. 34-39. Accordingly, the Court finds that the first element has been satisfied.

Second, as explained by Defendants in their Motion and attached Declaration [Doc. 48], this evidentiary material is currently unavailable to Defendants in large part because they acquiesced to a delayed discovery and deposition schedule in case Plaintiff elected to add additional defendants to the suit. That is, in Defendants view, the "purpose of the extended time for Plaintiffs to add parties and the parties' agreement not to take deposition discovery prior to this deadline was to accommodate the trial schedule of Plaintiffs' counsel and to avoid duplicative discovery should Plaintiff add additional insurer defendants to the case." Doc. 48 ¶ 6. *See also id.* ¶ 12 ("USF&G has not previously pursued discovery in the case based on the parties' mutual agreement not to engage in discovery pending Plaintiffs' amendment of their Complaint to add additional parties and the mutually-stated desire to avoid duplicative discovery."). Hence, the unavailability of this information reflects Defendants' cooperation and reliance on Plaintiffs' representations, rather than Defendants' incompetence, intransigence, or inattention. It appears certain that Defendants did not anticipate that their concurrence in the filing of the Amended Complaint, for example, would result in

9

such a naked tactical exploitation of that concurrence; the Court will not now punish the ordinarily laudable willingness of a litigant to accommodate reasonably an opponent. Thus, this element counsels in favor of granting Defendants' Rule 56(d) motion.

Third, for much the same reasons described above, at the time Plaintiffs filed their Motion, Defendants had agreed to abstain from employing the machinery of the legal system to obtain the evidence in question. Consequently, the reason that Defendants have not taken significant steps to obtain this information by, for example, taking depositions, is inextricably intertwined with their agreement to permit Plaintiffs to join all relevant insurers before beginning discovery. For Plaintiffs to characterize Defendants' request for discovery as "belated" at this juncture is flatly disingenuous and entirely unpersuasive. *See* Doc. 57 at 6. Hence, this factor also weighs in favor of permitting Defendants additional time in which to take discovery prior to responding for a motion for summary judgment.

Fourth, it is obvious that additional time, coupled with the requirements of civil procedure and the "liberal scope of document discovery" that Plaintiffs encourage this Court to continue, will better enable Defendants to ascertain the strengths of the arguments discussed above and, potentially, to substantiate those arguments in defense to summary judgment. Accordingly this final factor, as with the previous three, militates for granting Defendants' Rule 56(d) request.

In view of these factors, the Court will grant Defendants' Motion and deny without prejudice Plaintiffs' Motion. Here, the Court elects to dismiss Plaintiffs'

Motion, rather than merely defer its decision on the matter because Plaintiffs have again moved to amend their Complaint [Doc. 126]; the Court's decision on that motion may alter Plaintiffs' strategic calculus or otherwise bear on the arguments they wish to make on summary judgment.

## CONCLUSION

For the foregoing reasons, United States Fidelity and Guaranty Company's Fed. R. Civ. P. 56(D) Motion to Deny Plaintiffs' Motion for Partial Summary Judgment or Defer Consideration of Such Motion Pending Discovery [Doc. 47] is **GRANTED** and Plaintiffs' Motion for Partial Summary Judgment Against Defendant United States Fidelity and Guaranty Company Declaring it to Be in Breach of its Duty to Defend and Memorandum of Authorities in Support Thereto [Doc. 34] is **DENIED WITHOUT PREJUDICE.**

Dated this 18th day of February, 2016.

　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　**MARTHA VÁZQUEZ**
　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE

Stephen J. Lauer, *et al.*　　　　　　　　　Jon Thomas Neumann, *et al.*
**Comeau, Maldegen,**　　　　　　　　　**Steptoe & Johnson, LLP**
**Templeman & Indall, LLP**
Santa Fe, New Mexico　　　　　　　　Phoenix, Arizona
*Attorneys for Plaintiffs*　　　　　　　　*Attorneys for Defendants*